# N. Y. SUPERIOR COURT.

MONTGOMERY QUEEN, plaintiff and appellant agt. THE SECOND AVENUE RAILROAD Co., defendant and respondent.

The plaintiff on one side and a majority of the executive committee of the defendant's railroad on the other side, agreed, among other things that the plaintiff, except for a good and sufficient cause shown for his removal, should have the permanent and supreme control in the management of the company's road and interests, at a salary of $6,000 per year, and an increase thereof in proportion to a certain increase of the company's profits. That thereupon, March 2d, 1869, plaintiff was elected a director of the company:

That at the annual meeting of stockholders held April 5th, 1869, he was elected a director for a full term, and that at a meeting of the board of directors held the next day he was elected vice-president of the company, and thereupon the following resolution was passed by the board:

"Resolved that the vice-president perform the duties of general superintendent of the road, (one of the elective officers of the company) with the right to employ the former superintendent or such other person as he may see fit in his place to assist him until the further action of the board, and the salary of the vice-president be $6,000 per annum."

It appeared that on the day of the passage of that resolution, to wit, April 6th, 1869, plaintiff assumed the management of the road, and that he continued in such management and in the receipt of a salary at the rate of $6,000 per annum, until July 6th, 1870, when he was removed from such management, and also from the vice-presidency, by a vote of the board of directors without any cause being assigned for such removal.

*Held,* that the arrangement between the executive committee and the plaintiff was a contract not binding upon the defendant. The executive committee had no power from the charter, or by-laws to make such a contract personally or as an executive committee. Besides so far as the passage of said resolution of April 6th, 1869, and plaintiff's aquiescence therein constituted a new contract, it was one that was inconsistent with the prior arrangement entered into between plaintiff and the executive committee. Being inconsistent, such new contract became, at least to the extent of its inconsistency, a substitute for the prior arrangement.

Therefore, under the resolution of April 6th, 1869, the plaintiff was an officer of the company, and that his term of office was subject to the fifth section of the by-laws and consequently terminable at the pleasure of the board, and his claim under the arrangement made with the executive committee for a portion of his salary claimed upon the second year was not sustainable.

*General Term, November,* 1872.

*Before* BARBOUR, *C. J.*, MONELL *and* FREEDMAN, *JJ.*
APPEAL from judgment.

IRA SHAFER, *for appellant.*
JOHN E. BURRILL, *for respondent.*

*By the Court,* FREEDMAN, *J.*—This is an appeal from a
judgment entered in favor of the defendant against the plain-
tiff on a dismissal of the complaint on the trial.

The motion to dismiss was made upon the pleadings, the
admissions made by plaintiff's counsel in his opening to the
jury, and upon documentary evidence read by the counsel
for the respective parties in the course of their arguments.

From these sources it was made to appear that the plain-
tiff, in the month of December, 1868, was requested by the
officers of the defendant to investigate into and ascertain
the condition and affairs of defendant's road; that he was a
man noted for his successful management of horse-railroads;
that he made such investigation and reported the result
thereof.

That thereupon, in February or March, 1869, an arrange-
ment was entered into between plaintiff on the one side and
Mr. Wadsworth, the president, and Mr. Kent, one of the
directors of the road, who, together, constituted a majority
of the executive committee of the road on the other side,
whereby it was agreed, among other things, that the plain-
tiff, except for a good and sufficient cause shown for his re-
moval, should have the permanent and supreme control in
the management of the company's road and interests at a
salary of six thousand dollars per year, and an increase
thereof in proportion to a certain increase of the company's
profits. That thereupon, to wit, March 2d, 1869, plaintiff
was elected a director of the company to fill a vacancy then
existing; that at the annual meeting of the stockholders
held April 5, 1869, he was elected a director for a full term,
and that at a meeting of the board of directors held the

next day, he was elected vice-president of the company. The by-laws under which such elections were had contained the following provisions :

Section 4 provided that the principal officers of the company should be a president, a vice-president, a treasurer, a secretary, and a superintendent.

Section 5 provided that the president, vice-president, treasurer, secretary, and superintendent of the company should be annually elected, and should hold their offices at the pleasure of the board of directors, and until their successors should be duly chosen, unless sooner removed by the board.

Section 10 of the by-laws was in these words : " There shall be a vice-president, who shall perform the duties of the president, in case of his absence or inability to act, and if that office be vacant he shall act as president until a successor in said office is chosen."

Section 13 of the by-laws, also read in evidence, provided that the superintendent should have, subject to the direction of the president, the special superintendence of the track and cars, and the repairs and running of the road, and a general supervision of the depot, stables, and work-shops, and over all the conductors, starters, drivers, hostlers, mechanics and laborers in the company's employ, it also imposed upon him other duties and powers necessary to carry out what evidently were the main objects of the office.

It further appeared that the arrangement which had been entered into between Mr. Wadsworth, Mr. Kent, and the plaintiff, was imparted to the board of directors at the same meeting at which plaintiff was elected vice-president, and that thereupon, the following resolution was passed by the board, viz. :

" Resolved, That the vice-president perform the duties of general superintendent of the road, with the right to employ Mr. John W. Smith, the former superintendent, or such other person as he may see fit in his place to assist him, until the

further action of the board, and the salary of the vice-president be six thousand dollars per annum."

It also appeared that on the day of the passage of that resolution, to wit, April 6th, 1869, plaintiff assumed the management of the road, and that he continued in such management and in the receipt of a salary at the rate of six thousand dollars per annum, until July 6, 1870, when he was removed from such management and also from the vice-presidency by a vote of the board of directors without any cause being assigned for such removal.

Upon this state of facts, plaintiff's counsel conceded that if the original arrangement as to plaintiff's employment was for a longer time than one year, it was void under the statute of frauds. But he claimed that it was a good contract for a year at all events, and being good for that period, and plaintiff having gone on under it not only for that length of time, but also for part of another year, the presumption of law is, that the second year was upon the same terms as the first, and that defendant was bound to keep him during the whole of the second year, unless there was cause for his discharge.

The said counsel also conceded that according to the strict language of section 5 of the by-laws, the board of directors possessed the power to remove any officer of the company with or without cause, and that if the plaintiff occupied simply the character of vice-president, if his relation to the company was simply that of vice-president, the board had the right, power and authority to remove him at any moment with or without cause. But he claimed that the plaintiff, when he assumed control, did it as manager and superintendent entirely aside from his office and character as vice-president, and that he was simply clothed with the character and authority of that officer for the purpose of being more effectually enabled to carry out his general plans as managing superintendent.

The said counsel finally conceded that if the resolution of the 6th of April, 1869, cut off all prior negotiations, and

plaintiff's action were based on that resolution, the plaintiff would be compelled to stand or fall in his character as vice-president or superintendent. But he insisted that the said resolution was consistent with the prior arrangement, and passed in furtherance thereof; that the said prior arrangement constituted the real contract between plaintiff and defendant, and that as such a contract, to run for not more than one year, was not required by any statute or rule of law to be in writing, it could be proved by parol evidence, and should be construed with reference to the resolution and the intent of the parties who made it, and should, at least, be submitted to the jury as a question of fact. In this view of the case, it was claimed that plaintiff had an unquestionable right to go to the jury as to his right to recover the balance of his salary for the second year, amounting to $4,500.

This view, however, rests wholly upon the assumption that the arrangement between Mr. Wadsworth, Mr. Kent, and the plaintiff, was a contract binding upon the defendant, an assumption which further investigation shows to be wholly without foundation.

The defendant is a corporation, and, as such, is incapable of doing any act except through agents. The acts of such agents, in order to be binding upon the corporation, must either be done in the line of such agency and within the limits of authority conferred on them, or be ratified by the corporation. It is one of the fundamental conditions into which the corporators enter by becoming members of the corporation; that the corporate concerns shall be managed in the manner prescribed by the act of incorporation and the by-laws enacted in accordance therewith. The duties and powers of such officers or agents as the corporation may, by its by-laws recognize, are generally regulated by such by-laws. And as there is no grant of power in the mere name by which any such officer or agent may be designated, all persons dealing with him are chargable with notice of his

authority and of the limitations and restrictions upon it contained in the act of incorporation and by-laws.

Now the arrangement claimed by plaintiff to have been entered into between himself, Mr. Wadsworth, and Mr. Kent, was, that he the said plaintiff, except for a good and sufficient cause shown for his removal, should have the permanent and supreme control in the management of said company's road and interests. That the making of such a contract was beyond the scope of the authority of Mr. Wadsworth as president, and even beyond the powers of the executive committee, was shown by those sections of the by-laws which defined and prescribed the powers and duties of the president, the superintendent and the executive committee. A fair and impartial interpretation of these sections admits of no other conclusion. Indeed, it may well be doubted, whether the entire board of directors or even the corporation itself, could have invested the plaintiff with such permanent and supreme control as the literal reading of plaintiff's statement of the original arrangement calls for, and which, if conferred, would have worked, in the one case, an abdication, and in the other, an abolition of the board of directors. Even if we assume, therefore, that the said original arrangement amounted to a contract between the executive committee and the plaintiff, such contract, under that section of the by-laws, which required the executive committee to keep regular minutes to be submitted to the board of directors for approval at the next meeting of the board, could only have been an *ad interim* contract made subject to the ratification of the board, and which was liable to be modified or superceded by the action of the board.

And when, therefore, we find, that the matter was on the 6th of April, 1869, laid before the board, of which plaintiff was a member, and that the board acted upon it by the passage of the resolution referred to,—when we find, that up to the passage of that resolution the powers and duties

of vice-president and of superintendent had been entirely different and distinct; that the office of vice-president, except in case of the inability of the president to perform his functions, had so far been a comparatively unimportant one, while the powers and duties of the superintendent had been those of an active manager and had included, among other things, subject only to the supervisory power of the president, the special superintendence of the track and cars, and the repairs and running of the road, and a general supervision of the depot, stables and workshops, and over all the conductors, starters, drivers, hostlers, mechanics and laborers in the company's employ,—when we find, that by the resolution referred to, the said powers and duties of the superintendent were transferred to the plaintiff as vice-president, and in consideration thereof a salary of six thousand dollars attached to the office of vice-president,—and when, in addition to all this, we find that the plaintiff, who by that time had been a director for five weeks and presumptively was fully conversant with the by-laws, did not object upon the ground of the incomprehensiveness or insufficiency of the resolution, or in any wise question the determination made by the board, but that, on the contrary, he thereupon entered upon the discharge of the powers and duties imposed upon him by said resolution and the by-laws, and for the salary fixed by the same resolution, continued so to perform duty for a period of fifteen months without objection or question,—we can come to no other conclusion than that plaintiff acquiesced in the action of the board of the directors, and that, so far as the passage of said resolution and plaintiff's acquiescence therein constituted a new contract, it was one, that was inconsistent with the prior arrangement entered into between plaintiff and the executive committee. Being inconsistent, such new contract became, at least to the extent of its inconsistency, a substitute for the prior arrangement. From this it follows, that the learned

judge below correctly held, that under the resolution of April 6th, 1869, plaintiff was an officer of the company, and that his tenure of office was subject to the fifth section of the by-laws, and consequently terminable at the pleasure of the board.

The complaint was properly dismissed, and the judgment appealed from must be affirmed with costs.

BARBOUR, *C. J.*, and MONELL, *J.* concurred.